IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HECTOR GARCIA § | | |
| *Plaintiff* § | | |
| § | | |
| VS. § | CIVIL ACTION NO. 2:10CV00367-RSP | |
| § | | |
| TYSON FOODS, INC. § | | |
| *Defendant* § | | |

**PLAINTIFF HECTOR GARCIA'S OBJECTIONS AND OPPOSITION TO
TYSON FOODS, INC.'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

COMES NOW, Plaintiff HECTOR GARCIA ("Garcia"), and files this Opposition to the Motion for Summary Judgment filed by Defendant Tyson Foods, Inc., ("Tyson") and in support thereof, would show the Court as follows:

**I.**

**INTRODUCTION**

On September 16, 2008, Garcia injured his back while moving a large cart containing thousands of chicken eggs at Tyson's hatchery facility in Nacogdoches, Texas. Garcia filed the instant case in order to recover damages for the personal injuries he sustained while working for Tyson, which is admittedly not a subscriber to the Texas Worker's Compensation insurance system.

In its Motion for Summary Judgment (the "Motion"), Tyson asks the Court to grant it summary judgment simply as a result of Garcia allegedly signing a document, written in the Spanish language, that purportedly waives of all causes of action in exchange for "eligibility" for "benefits" that were unknown at the time the document was signed (hereinafter referred to as the "waiver"). *See* Docket Entry 64-1 at 344-345. Texas law requires that any waiver of a cause of

action against a non-subscribing employer be done so with knowledge of the waiver's contents and its effect, and that the waiver must be supported by adequate consideration. In the instant case, neither of those requirements were met; therefore, Tyson's Motion should be denied.

## II.

### OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Tyson attached multiple affidavits to its Motion in support of its contention that Garcia knowingly executed the waiver. Garcia first objects to the Affidavit of Valeta Hudman ("Hudman"), a staff nurse for Tyson, on the basis that it constitutes hearsay and speculation. Specifically, Hudman's statements that "Garcia would have been told that if the Acceptance and Waiver met with his approval, to sign in the space indicated on the second page" and that "Garcia indicated his desire to participate in WISP by providing his signature printed name, and employee number on the second page of the Acceptance and Waiver" are hearsay because Hudman was not present at the time Garcia allegedly signed the document, and she has no personal knowledge of anything that was allegedly told or explained to Garcia. *See* Affidavit of Valeta Hudman, attached to the Motion as Exhibit "A." Based on her own admission, Hudman states that a woman named Linda Bell met with Garcia to review the Spanish language document; therefore, any knowledge she has came from out-of-court statements, which are hearsay. *Id*. at 2. Furthermore, anything that Garcia "would have been told" is speculative because Hudman apparently does not know exactly what Garcia was or was not told at the time he was presented with the waiver. *Id*. at 2.

Garcia also objects to the portions of the Hudman affidavit where she testifies that true and correct English versions of the Spanish versions of the 1) Workplace Injury Settlement Program document and 2) Acceptance and Waiver are attached to her affidavit. *Id*. at 1. There

is no predicate found in the affidavit that Hudman is fluent in Spanish and English or that she can read the Spanish language such that the English version of the documents attached to her affidavit are accurate translations of the Spanish version of the documents. Any knowledge she may have regarding the accuracy of the translated Spanish waiver and related documents came from a third party and therefore, her statements that the Tyson documents in the Spanish language attached to her affidavit as Appendix "1" and the "demonstrative version" of the waiver in the English language constitutes hearsay and lacks the appropriate predicate foundation. Accordingly, Garcia requests that the Court sustains these objections to Hudman's affidavit.

### III.

#### RESPONSE TO ISSUE TO BE DECIDED BY THE COURT

Tyson is not entitled to summary judgment based upon Garcia's alleged acceptance of Tyson's Workplace Injury Settlement Program ("WISP") benefits and execution of the WISP Acceptance and Waiver because the waiver 1) did not meet the requirements of section 406.033 of the Texas Labor Code and 2) is supported by insufficient consideration.

### IV.

#### EXHIBITS

| | | |
|---|---|---|
| Exhibit "A": | | Photo of egg cart |
| Exhibit "B": | | Employee Initial Report of Injury or Illness |
| Exhibit "C": | | Excerpts from deposition of Pamela Blaker |
| Exhibit "D": | | Excerpts from deposition of Amber Dodd |
| Exhibit "E": | | Excerpts from deposition of Hector Garcia |
| Exhibit "F": | | Affidavit of Hector Garcia |
| - | Exhibit "A": | "Aceptacion y Renuncia" |

Exhibit "G":     Affidavit of Lisa Ann Penafiel

Exhibit "H":     Excerpts from deposition of Dr. Neal Haynes

## V.

### BACKGROUND

Garcia sustained a lower back injury on September 16, 2008 when he was pulling a large cart of eggs at Tyson's hatchery facility in Nacogdoches. An accurate depiction of the type of cart Garcia was pulling is attached as Exhibit "A." Garcia reported the injury on September 18, when he signed a document that was interpreted for him by a person named Mario Morales. A true and correct copy of the "Employee Initial Report of Injury or Illness" is attached as Exhibit "B."

When a Tyson employee is injured, a nurse-employee of Tyson prepares an "assessment treatment plan," where the nurse assigns restrictions and places the worker on restricted duty to allow for rest or healing. *See* Exhibit "C" at 24:21-25; 25:1. If the employee needs to see a doctor, then documents for Tyson's Workplace Injury Settlement Program ("WISP") are presented to the employee to sign. Tyson does nothing to determine whether or not someone can read and write the English language, and does nothing to determine whether a person can read or write the Spanish language. *See* Exhibit "C" at 32:2-7; Exhibit "D" at 13:17-20. The Tyson nurse is responsible for determining whether the employee can understand English or Spanish; however, Tyson has no procedure in place for the nurse to make that determination. *See* Exhibit "C" at 32:24-25; 33:1-6.

Pamela Blaker ("Blaker"), Tyson's corporate representative regarding the WISP program, testified that she did not know whether Garcia could read or write the English or Spanish languages. *See* Exhibit "C" at 33:7-12. Blaker also had no personal knowledge

regarding the manner in which the WISP and its related documents, including the Summary Description Plan, were presented to Garcia; in fact, Blaker had no knowledge whether 1) the WISP documents were even given to Garcia or 2) what, if anything, was explained to Garcia at the time he signed the waiver. Exhibit "C" at 38:16-25; 39:1-3; 41:11-19. Blaker testified that to her knowledge, Linda Bell, the employee whose name appears on the waiver, could not speak Spanish. *Id.* at 38:16-25; 39:1-3. The waiver Garcia allegedly signed was written in Spanish, and Blaker testified that Bell did not speak Spanish. *Id*. at 37:25; 38:1. Also, the space in the alleged waiver for the signature of the interpreter and person who read the waiver to Garcia is blank, thus indicating that the document was never read to Garcia. *See* D.E. 64-1 at 344-345.

Garcia was taken to see a doctor in Nacogdoches, Dr. Florencio Singson, on September 29. This was part of the "Basic Benefits" that every employee injured while working for Tyson receives. On or about October 21, 2008, Garcia allegedly executed the waiver at issue in this case, which, according to the English translation of the waiver, simply made him "eligible" for "Comprehensive Benefits." *See* Docket Entry 64-1 at 334-345.

Garcia never went to school at all as a child in Zacatecas, Mexico. *See* Exhibit "E" at 34:9-25. He has never obtained a driver's license because he did not have enough education. *Id*. at 10:22-25; 11:1-2. He can read and write a little in Spanish, but struggles with it. *Id*. at 36:1-4. Garcia remembers signing the waiver, but according to him, his supervisor, Bryan Ferrell, told him it was for Garcia to see Dr. Singson. *See* Exhibit "F" at 1.[1] Garcia cannot understand the waiver, and would not have understood it at the time it was signed. *Id*. at 1-2. No person working at Tyson ever explained the waiver to him or explained what would happen if he signed the waiver. *Id*. at 2. No one working for Tyson explained to Garcia that if he signed the waiver,

---

[1] Garcia's affidavit was translated to and from him by Lisa Ann Penafiel, Licensed Court Interpreter, whose affidavit concerning the actions she took in translating Garcia's affidavit is attached as Exhibit "G."

then he would not be able to sue Tyson to recover damages for his injuries. *See Id*. at 2. Garcia did not know that if he signed documents after his injury, then he would not be able to sue Tyson to recover damages because no one ever explained that to him. Exhibit "F" at 2. He also never intended to release Tyson from any future claims he could make to recover damages for his injuries.

Garcia does not understand what Tyson's WISP is. *Id*. He cannot read, understand, or comprehend the WISP documents, and does not remember being given a copy of the program document during the time he worked for Tyson. *Id*.

## VI.

### ARGUMENT AND AUTHORITIES

**A.** **SUMMARY JUDGMENT STANDARD OF REVIEW.**

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 417 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied,* 510 U.S. 859, 114 S. Ct. 171, 126 L. Ed. 2d 131 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.4, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 152, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

In determining whether there is a disputed issue of material fact that precludes summary judgment, this Court must consider all evidence in the light most favorable to Garcia as the nonmovant. *Fields,* 922 F.2d at 1187. Tyson has failed to meet its summary judgment burden because, despite its conclusory statements and arguments, a fact issue exists as to whether or not 1) Garcia knew the effect of the waiver, 2) the waiver showed the true intent of the parties, and 3) the waiver was supported by adequate consideration. Accordingly, this Court should deny Tyson's motion and allow Garcia to proceed to trial.

**B.    TYSON'S WAIVER DOES NOT MEET THE REQUIREMENTS OF SECTION 406.033 OF THE TEXAS LABOR CODE.**

Section 406.033(f) of the Texas Labor Code mandates that a cause of action to recover damages against an employer that does not have workers' compensation insurance coverage may not be waived by an employee after the employee's injury unless:

(1)    the employee voluntarily enters into the waiver with knowledge of the waiver's effect;

(2) the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;

(3) the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and

(4) the waiver is in a writing under which the true intent of the parties is specifically stated in the document.

TEX. LAB. CODE ANN. § 406.033(f) (Vernon 2013).

Under general common law, the Texas Supreme Court has always presumed that "a party who signs a contract knows its contents" and "[a]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re Bank of Am., N.A.*, 278 S.W.3d 342, 345 (Tex. 2009); *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005, orig. proceeding).

However, this case is not a normal, everyday contract dispute case. The waiver at issue had to meet the strict requirements of section 406.033 of the Texas Labor Code, which means that the waiver had to be entered into "voluntarily . . . with knowledge of the waiver's effect." TEX. LAB. CODE ANN. § 406.033(f)(1). Texas courts have consistently construed statutes based on the presumption that the Legislature intended an entire statute to be effective, so courts "try to give effect to all the words of a statute, treating none of its language as surplusage when reasonably possible." *Phillips v. Bramlett*, 288 S.W.3d 880 (Tex. 2009); *e.g.*, TEX. GOV'T CODE § 311.021(2); *Sultan v. Mathew*, 178 S.W.3d 747, 751 (Tex. 2005) ("We must avoid, when possible, treating statutory language as surplusage."); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995) ("We will not read statutory language to be pointless if it is reasonably susceptible of another construction."); *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963) ("[E]ach sentence, clause and word is to be given effect if reasonable and possible.").

The waiver at issue is akin to the waiver in a previous Eastern District case, *Blackshire v. Tyson Foods, Inc.*, 2010 U.S. Dist. LEXIS 84237 (E.D. Tex. 2010). In *Blackshire*, Anthony Blackshire was injured while working at Tyson's poultry processing facility in Carthage, Texas, and subsequently filed a lawsuit asserting claims for negligence against Tyson. *Id*. at *1-2. Blackshire executed an English version of the waiver presumably similar to the one at issue in this case, and Tyson made the same arguments it is making now—that Blackshire's claims are precluded as a result of him executing the waiver and accepting WISP benefits. *Blackshire,* 2010 U.S. Dist. LEXIS 84237 at *2-4.

The court in *Blackshire* acknowledged the same cases Tyson has cited in its Motion for the proposition that as a matter of law, Blackshire was deemed to have read and understood the terms of the waiver, regardless of whether or not he actually read or understood the waiver before signing it. *Id*. at *11. However, the court noted, the specific language of section 406.033(f)(1) of the Texas Labor Code requires that in order for the waiver to be valid, the employee must "'voluntarily enter[] into the waiver with knowledge of the waiver's effect.'" *Id*. at *11-12.

Based on the specific language of Section 406.033(f)(1), the *Blackshire* court held that Section 406.033(f)(1) requires that a

> . . . waiver of a cause of action against a non-subscribing employer be voluntarily entered into with knowledge of the waiver's effect, [which] supersedes the general, common law presumption in Texas that one who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect. Therefore, more than Mr. Blackshire's signature on the Waiver and Acceptance is required to demonstrate that he entered into the waiver voluntarily with knowledge of the waiver's effect in accordance with Section 406.033(f)(1).

*Blackshire,* 2010 U.S. Dist. LEXIS at *12.

The court ultimately held that the summary judgment evidence showing that 1) Blackshire never told the Tyson nurse that he understood the effect of the waiver, and 2) the Tyson nurse did not know how well Blackshire read or the extent to which he understood the legal terms contained in the waiver was enough to preclude summary judgment because it raised a genuine issue of material fact as to whether Blackshire voluntarily entered into the Acceptance and Waiver with knowledge of its effect. *Blackshire*, 2010 U.S. Dist. LEXIS at *21-22; *see also Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 194 (Tex. 2004) (holding that a fact issue existed regarding actual knowledge of the terms of an injury plan where the plaintiff could not read or write English, never received an explanation of the plan in Spanish or English, and employer did not provide him any paperwork written in Spanish).

Tyson has not adduced any competent summary judgment evidence to show that Garcia voluntarily entered into the waiver with knowledge of its effect. Linda Bell, the person whose name is subscribed to the waiver, cannot speak Spanish, and the waiver is blank for the person who "read the Acceptance and Waiver to the employee." *See* Exhibit "C" at 38:16-25; D.E. 64-1 at 345. Garcia, on the other hand, has demonstrated that he did not know what he signed and had no knowledge of the effect of the waiver. In the instant case, the summary judgment evidence demonstrates that Garcia 1) has no education, 2) cannot understand the waiver or the WISP documents, 3) was told that the waiver needed to be signed so he could go see the doctor, 4) never had the waiver or WISP documents explained to him, 5) did not know that if he signed the document, then he would not be able to sue Tyson to recover damages because no one ever explained that to him; 6) never intended to release Tyson from any future claims he could make to recover damages for his injuries, 7) does not understand what Tyson's WISP is, and 8) does not remember being given a copy of the program document during the time he worked for

Tyson. *See* Exhibit "E" at 10:22-25; 11:1-3; 34:9-25; 36:14; *see also* Exhibit "F" at 1-2. Garcia has raised a fact issue as to whether or not he voluntarily entered into the waiver with knowledge of its effect; therefore, summary judgment should be denied.

C. **THE CONSIDERATION FOR THE RELEASE AND WAIVER LACKED ADEQUATE CONSIDERATION.**

Even if the waiver was valid, the consideration paid by Tyson was grossly inadequate. In Texas, a release is treated as a type of contract, and like any other contract, must be supported by valuable consideration. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973); *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 903 (Tex. App.--Corpus Christi 1989). If it is determined that a release was executed without valuable consideration, it may be invalidated. *Victoria Bank*, 779 S.W.2d at 903.

On a challenge to the adequacy of consideration, a court will generally not look beyond the face of the contract unless there is unconscionability, bad faith, or fraud, in which case, a court may consider the adequacy of consideration in the interest of equity. *See Martin v. Martin*, 12 S.W.3d 120, 125 (Tex. App.—Fort Worth 1999, no pet.). In order for the consideration to be deemed inadequate, it must be so grossly inadequate as to shock the conscience, being tantamount to fraud. *Id*.

In the instant case, Tyson contends that it has paid Garcia nearly $10,000.00 pursuant to WISP. *See* D.E. 64 at 2. Given Garcia's injuries and the treatment prescribed for him, this amount pales in comparison to the amount of money Garcia's doctor has testified it will cost for Garcia's treatment. Specifically, Dr. Neal Haynes, a neurosurgeon, testified that Garcia will require a fusion at the L4-5 and L5-S1 levels to repair large herniated discs, and Garcia also needs to undergo a left and right sacroiliac joint fusion because he still has pain in those joints following conservative care. *See* Exhibit "H" at 53:16-25; 54:1; 62:16-20. Dr. Haynes' fee for

the L4-5 and L5-S1 fusion is $34,300.00. *Id*. at 64:24-25. The fee for the left and right sacroiliac joint surgeries are $5,000.00 each. *Id*. at 65:1-7. The hospital fee for the L4-5 and L5-S1 surgeries at Nacogdoches Medical Center, the hospital where the surgeries would be performed, is $45,000.00. *Id*. at 66:15-19. The hospital fees for the left and right sacroiliac joint fusion are $25,000.00 each. *Id*. at 66:21-25; 67:1-20.

Garcia is facing approximately $139,000.00 in hospital and doctor fees to have his injuries surgically repaired. The $10,000.00 Tyson alleges it paid him as a result of the waiver is grossly inadequate to compensate him for his injuries and therefore waive any causes of action Garcia may have against Tyson. The funds Tyson alleges it paid is less than ten percent of the amount of damages Garcia has incurred; therefore, the consideration Tyson alleges it has paid Garcia should shock the conscience and is tantamount to fraud. Accordingly, the release and waiver should be invalidated, and summary judgment should be denied.

**D. TYSON'S RELIANCE ON *MARTINEZ* IS INAPPOSITE TO THE INSTANT CASE.**

In its Motion, Tyson heavily relies on a 1998 case, *Martinez v. IBP, Inc.*, 961 S.W.2d 678, 679 (Tex. App.—Amarillo 1998, writ denied) for the proposition that a waiver of an employee's rights against a non-subscribing employer is not void or unenforceable as a result of being against public policy. *See* D.E. 64 at 13. *Martinez* has no bearing on this case because Garcia is not contending that Tyson's waiver is void or unenforceable as a result of being against public policy. Furthermore, *Martinez* was decided before the 2005 amendments to the Texas Labor Code adding subsection (f) to Section 406.033, which requires the employee to voluntarily enter into the waiver with knowledge of the waiver's effect. *See* TEX. H.B. 7, 79th Leg., R.S. (2005). *Martinez* has no application to this case; therefore, Tyson's arguments concerning *Martinez* as it applies to Garcia's arguments should be disregarded.

PLAINTIFF HECTOR GARCIA'S OBJECTIONS AND
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

12

## VII.

### CONCLUSION AND PRAYER

The summary judgment evidence propounded by Garcia clearly demonstrates that a fact issue exists as to whether or not Garcia executed the waiver with knowledge of its effect. The evidence shows that Garcia had no idea what he was signing, no one explained any documents to him, and he had no knowledge of the effect of any document he signed. Furthermore, even if the waiver was valid, inadequate consideration was given for it because Garcia's damages grossly exceed the amount of money Tyson contends it paid to Garcia.

FOR THESE REASONS, Plaintiff Hector Garcia respectfully requests that the Court DENY Defendant Tyson Foods, Inc.'s Motion for Summary Judgment and grants him any and all such other and further relief to which he may be entitled.

Dated: June 20, 2014

Respectfully submitted,

By: */s/ Kenneth C. Goolsby*
    Kenneth C. Goolsby
    State Bar No. 24003668

**BOON, SHAVER, ECHOLS,**
**COLEMAN & GOOLSBY, P.L.L.C.**
1800 N.W. Loop 281, Suite 303
Longview, TX 75604
Telephone: (903) 759-2200
Facsimile: (903) 759-3306
Email: casey.goolsby@boonlaw.com

***ATTORNEYS FOR PLAINTIFF***
***HECTOR GARCIA***

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document in accordance with the Federal Rules of Civil Procedure on this the 20th day of June, 2014.

                                      */s/ Kenneth C. Goolsby*
                                      Kenneth C. Goolsby